UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **MICHAEL RAYMOND FREMIN** | **CASE NO. 5:17-CV-01670 SEC. P** |
| **VERSUS** | **JUDGE S. MAURICE HICKS, JR.** |
| **DET. TUTTLE, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned magistrate judge, on reference from the District Court, is a motion for summary judgment [doc. # 33] filed by defendants, Detective Shane Tuttle, Detective Jeffrey Humphrey, and five to eight other unknown officers. For reasons set forth below, it is recommended that the motion be GRANTED-IN-PART and DENIED-IN-PART.

**Background**

Plaintiff pro se Michael Fremin, who is proceeding in forma pauperis in this matter, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on December 27, 2017. Fremin contends that on September 8, 2017, prior to arrest, Bossier Police Department Detectives Shane Tuttle and Jeffrey Humphrey, as well as five to eight unidentified officers, attacked him. He alleges that, after being interrogated at the Bossier Police Department for two to three hours, Tuttle and Humphrey removed him from the interview room and threatened him. On the way back to the interview room, Detective Tuttle, who was walking behind plaintiff, pushed him into Detective Humphrey. Tuttle then attacked him. When plaintiff put his hands up to block Tuttle's punches, Humphrey grabbed him and threw him "to the floor through a doorway" where several men in plain clothes proceeded to kick, stomp, and hit him. Plaintiff alleges that he did nothing to provoke the attack. As a result of the attack, plaintiff suffered broken ribs, a concussion, and contusions to his head. He seeks compensatory relief for his pain and suffering, as well as punitive damages for "police brutality."

In response to court order, plaintiff amended his complaint on March 15, 2018, to allege that he was charged with battery of a police officer, possession of stolen things, and being a fugitive from justice. (Amend. Compl. [doc. # 8]). In his amended pleading, he agreed to the dismissal of the unnamed defendants because he did not know how to obtain their names. *Id*. The Clerk of Court obliged his request and terminated the unknown officers as defendants. *See* docket sheet.

On May 3, 2018, plaintiff advised the court that on April 10, the state had dismissed his charge for battery on a police officer, and released him on probation for the possession of stolen property charge. [doc. # 9]. However, before plaintiff could get "established," he was "violated." *Id*. Plaintiff is presently housed at the Tensas Parish Detention Center.

On May 7, 2018, the court ordered service on defendants, Tuttle and Humphrey. (May 7, 2018, Mem. Order [doc. # 10]). On September 18, 2018, defendants, Tuttle and Humphrey, filed their answer. [doc. # 19].

On January 15, 2019, defendants, Tuttle and Humphrey, plus the five to eight unnamed officers who had been dismissed from the suit, filed the instant motion for summary judgment seeking dismissal of plaintiff's claims, in their entirety. On May 17, 2019, plaintiff filed what may be considered as an opposition to defendants' motion. *See* doc. # 41. On June 19, 2019, plaintiff submitted a letter in which he clarified that he did not wish to reinstate his claims against the unknown officer defendants. *See* doc. # 44.

Movants did not file a reply brief, and the time to do so has lapsed. *See* Notice of Setting. [doc. # 34]. Thus, the matter is ripe.

## Standard of Review

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

2

law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. The non-moving party may not rely merely on the allegations and conclusions contained within the pleadings; rather, the non-movant "must go beyond the pleadings and designate specific facts in the record

3

showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant does not satisfy his burden merely by demonstrating some metaphysical doubt as to the material facts, by setting forth conclusory allegations and unsubstantiated assertions, or by presenting but a scintilla of evidence. *Little*, 37 F.3d at 1075 (citations omitted).

Moreover, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little, supra* (citation omitted) (emphasis in original). In sum, "[a]fter the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000) (citation omitted).

### Relevant Facts[1]

**I.  Defendants' Version**

1.  On the morning of September 8, 2017, Bossier City Police Department (the "Department") patrol officers were dispatched to a residence in Bossier City, Louisiana, to investigate a homicide. *See* Affidavits of Tuttle, Humphrey, & Wooten; MSJ Exhs. 2-4.

2.  The officers found Fremin and three other individuals at the residence, and brought them into the Department for questioning. *Id*.

3.  Various detectives collected statements from Fremin and the three other individuals concerning their whereabouts on the night of September 7, 2017. *Id*.

4.  Fremin told officers at the Department that he was at the Horseshoe Casino over the course of the evening on September 7, 2017. (Humphrey Affidavit).

---

[1] The court's recitation of relevant facts generally tracks defendants' Statement of Uncontested Material Facts, as supplemented by the court's independent review of plaintiff's deposition and the record. To the extent there is a conflict in the evidence in the context of the present motion, the court necessarily credits plaintiff's version of events.

5. Detectives Tuttle and Wooten went to the Horseshoe Casino to verify Fremin's assertion that he was at the casino on the night of September 7, 2017. Detective Wooten remained in the casino parking garage near Fremin's parked car while Detective Tuttle went into the casino to review surveillance video footage from the previous night. (Tuttle and Wooten Affidavits).

6. The footage reviewed by Tuttle showed Fremin arriving at the casino property, exiting his vehicle in the parking garage and entering the casino building with another person. *Id*.

7. Tuttle and Wooten remained at the Horseshoe Casino for several hours on September 8, 2017, attempting to confirm the veracity of Fremin's statement. They relayed the information gathered from the surveillance video back to the Department. (Tuttle and Wooten Affidavits).

8. Tuttle was not present at the Department when Fremin was interviewed, and was not personally involved with his interview. Rather, he was at the Horseshoe Casino. (Tuttle and Humphrey Affidavits).

9. Fremin's interview began in the Department interrogation rooms. (Humphrey Affidavit).

10. After receiving information about the casino surveillance videos from Tuttle and Wooten, and upon the belief that Fremin was fearful of someone in an adjoining interview room overhearing his statements, Humphrey, stepped in, and decided to move Fremin's interview to his office. (Humphrey Affidavit).

11. Fremin was not physically restrained while he was being interviewed. *Id*.

12. Fremin became angry and argumentative with Humphrey while he was being questioned in Humphrey's office. *Id*. Recognizing that the interview had become counterproductive, Humphrey decided to move Fremin back to the original interview room. *Id*.

13. Humphrey began "leading" Fremin down a hallway between his office and the interview rooms. Humphrey was the only officer with Fremin and was walking behind him. *Id*.

14. While making their way back to the interview rooms, Fremin continued to be upset and agitated and abruptly stopped walking. *Id*.

15. Humphrey placed his open hand on Fremin's back and instructed him to "keep moving" forward. *Id*.

16. Fremin then turned around toward Humphrey with his fists clenched and raised. He

5

    threw a punch at Humphrey and struck him in the chest. *Id*.

17. Concerned for his safety, Humphrey pushed Fremin to the ground with an open hand and got on top of him in an attempt to subdue and restrain him with handcuffs. *Id*.

18. Two officers aided Humphrey in placing the handcuffs on Fremin. *Id*.

19. This exchange was not videoed or recorded. *Id*.

20. After he was handcuffed, Fremin was placed back in the interview room. Once there, he began complaining that he was in pain; had hit his head; and that his blood sugar was elevated. *Id*.

21. Hearing his complaints, the Department decided to call the Bossier City Fire Department to have EMS workers evaluate Fremin. Fremin told the Fire Department that he was injured from a fall at the Department. The EMS personnel decided to transport Fremin to the hospital for treatment. *Id*.

22. Fremin was treated at University Hospital and released that same night. After being released from the hospital, Fremin was brought back to the Department. (Fremin Depo., pgs. 114-115; Defs. MSJ, Exh. 1; Humphrey Affidavit).

23. When he returned to the Department on the night of September 8, 2017, Fremin was charged with and arrested for battery on a police officer, possession of stolen property, and being a fugitive. *See* Arrest Report [doc. # 8-1]; Humphrey Affidavit.

24. Detective Tuttle compiled and signed Fremin's arrest report at the Department on the night of September 8, 2017, *after* Fremin was released from the hospital. *See* Arrest Report and Tuttle Affidavit.

25. Detective Tuttle is six feet (6'0") tall and weighs one hundred and eighty (180) pounds. He has a full head of sandy blonde hair. He is not bald and was not bald on September 8, 2017. (Tuttle Affidavit).

26. Detective Humphrey is five feet and seven inches (5'7") tall and weighs two hundred and thirty (230) pounds. He shaves his head. (Humphrey Affidavit).

**II. Plaintiff's Version of Pertinent Events**

1. After sitting in the interrogation room for awhile, Detective Tuttle came and retrieved Fremin. Fremin did not recall whether Tuttle identified himself. Tuttle appeared shorter than Fremin, stocky, with a bald head. Detective Humphrey followed Fremin and Tuttle into what Fremin assumed was Tuttle's office. Humphrey was pudgy with black hair. (Fremin, Depo., pg. 96).

6

2.       The detectives told Fremin that they were going to walk him back to the interrogation room.  As they were going down the corridor, Detective Tuttle shoved Fremin from behind into Detective Humphrey.  Fremin turned around, and Tuttle was in a fighting stance, whereupon he proceeded to swing at Fremin, but missed.  Fremin put his arm up to block it.  Fremin saw that Tuttle was not throwing punches anymore, and thus, he lowered his hands.  As Fremin was about to turn around, someone (he assumed was Humphrey) grabbed him from behind and threw him through the doorway to the ground.  One of the two detectives jumped on his back, and was hitting him in the back of the head.  Fremin looked up and observed a group of five to seven men standing there.  They proceeded to kick and stomp Fremin, breaking his bones, until he could not remember anything.  (Fremin Depo., pgs. 100, 101, 111, 113).

3.       Fremin woke up as he was being brought into the interrogation room.  They placed him in a chair, but Fremin passed out again, and woke up on the floor with the paramedics tending to him.  (Fremin Depo., pg. 101).

4.       At the hospital, the doctor telephoned the Bossier Police Department and inquired about the circumstances of Fremin's injuries.  The Department responded that Fremin had fallen down.  During the last call, the Department finally conceded that Fremin had not fallen down; rather, he had resisted arrest.  However, the officers did not place Fremin under arrest until after he left the hospital.  (Fremin Depo., pg. 114).

5.       Fremin also originally told the doctor that he had fallen down.  He did so because two police officers were standing in the emergency room with him.  After the Department finally admitted to the doctor that Fremin had "resist[ed] arrest," Fremin told the doctor the truth.  He left the hospital around 10:00 p.m.  (Fremin Depo., pg. 115).

## Analysis

### I. Tuttle and Humphrey

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983).  Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein.  *Id*.  Thus, "[t]o state a claim under § 1983, a plaintiff must (1) allege a

7

violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dallas Independent School District*, 28 F.3d 521, 525 (5th Cir. 1994). The first inquiry is whether plaintiff has alleged a violation of a constitutional right at all. *Id.*, *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995).

When, as here, plaintiff seeks money damages from government officials in their individual capacities under § 1983,[2] the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). The qualified immunity doctrine balances two often conflicting interests ─ "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (citations and internal quotation marks omitted). In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir.2000) (citing *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092 (1986) (internal quotation marks omitted).

Qualified immunity is nominally characterized as an affirmative defense. However,

---

[2] There is no indication that plaintiff asserted an official capacity claim.

once raised by defendants, it devolves upon plaintiff to negate the defense by showing that the officials' conduct violated clearly established law. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008) (citation omitted). Plaintiff's burden is two-pronged. *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted). First, plaintiff must demonstrate that defendant(s) violated a constitutional right under current law. *Id*. "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id*. (quoted source and internal quotation marks omitted). The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

In the peculiar context of a motion for summary judgment, "once [the court has] determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record, the reasonableness of [an officer's] actions . . . is a pure question of law." *Scott*, 550 U.S. at 397, 127 S.Ct. at 1776 n.8 (2007). Consequently, the Fifth Circuit has recognized that,

> when facts are undisputed and no rational factfinder could conclude that the officer acted unreasonably, we can hold that an officer acted reasonably as a matter of law. But when facts are disputed and significant factual gaps remain that require the court to draw several plaintiff-favorable inferences, our analysis is more tentative. In these cases, we must consider what a factfinder could reasonably conclude in filling these gaps and then assume the conclusion most favorable to the plaintiff.

*Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 411–12 (5th Cir.2009) (internal citation omitted). In other words, there is no constitutional violation if – even after crediting the version of facts most favorable to plaintiff – the officer's conduct was objectively reasonable. *Id*.

9

The Supreme Court has proclaimed that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . ." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989). Of course, the protections of the Fourth Amendment extend to the states pursuant to the Fourteenth Amendment. *Dunaway v. New York*, 442 U.S. 200, 207, 99 S.Ct. 2248, 2253-2254 (1979) (citation omitted).

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 2405 (2007) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868 (1968) (internal quotation marks omitted). Here, there is evidence that Bossier City police officers detained Fremin for purposes of questioning in connection with a homicide investigation. *See Lincoln v. Scott*, 887 F.3d 190, 196–99 (5th Cir. 2018).

To prevail on his excessive force claim, plaintiff must establish: "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir.2007) (citations omitted). By nature, excessive force claims are fact-intensive and dependent on the circumstances of each case. *Hanks v. Rogers*, 853 F.3d 738, 745 (5th Cir.2017) (citations omitted). Factors that the court should consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

10

(citations and internal quotation marks omitted). The court must analyze the claim from the perspective of a reasonable officer on the scene. *Id*. (citation omitted). Thus, the "inquiry is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Id*. (citations and internal quotation marks omitted).

Furthermore, "the plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).

In support of their motion, defendants adduced evidence that Tuttle was not present at the Department when plaintiff suffered his injuries. Although plaintiff maintains that Tuttle was present and initiated the scuffle, he described Tuttle as "bald" and stocky. However, Tuttle is six feet (6'0") tall, weighs one hundred and eighty (180) pounds, and has a full head of sandy blonde hair.[3] Further, plaintiff does not recall Tuttle identifying himself to him. (Fremin Depo., pg. 96).

In response to defendants' motion, plaintiff pointed to the arrest report that was signed by Tuttle to support his contention that Tuttle was present during the encounter. Although Tuttle signed the arrest report nothing on the report indicates that he was present during the incident. *See* doc. # 8, Exhs. Apart from the report, plaintiff did not explain or adduce evidence to show how or why he believes that one of the officers involved in the incident was Tuttle.

The court observes that "a party cannot defeat summary judgment with conclusory

---

[3] Tuttle also adduced a copy of his driver's license which was issued on December 19, 2017. (MSJ, Exh. 2). The license shows Tuttle with a full head of hair, and indicates that he was 6'1" tall and weighed 165 pounds. *Id*.

11

allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir.2007). Furthermore, "[w]hen opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769; *see also Anderson,* 477 U.S. at 248 (summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party).[4]

On the existing record, the undersigned is compelled to find that no reasonable trier of fact could find that defendant, Tuttle, was present during the subject incident.

In any event, whether, as plaintiff contends, Tuttle was behind him, or instead, Humphrey was behind him (or in front of him), ultimately is of no moment, because those individuals did not inflict an injury on plaintiff that was unreasonable under the circumstances. First, plaintiff asserted that the person behind him shoved him, and then unsuccessfully took a swing at him. However, the swing and a miss clearly did not injure plaintiff. Moreover, the shove was de minimis. *See Freeman, supra*. Second, when the officer in front of plaintiff turned around, he could not have seen that the officer behind plaintiff had accosted him. Instead, the officer briefly observed plaintiff in a fighting stance. Under those circumstances, it was not unreasonable for an officer to take plaintiff to the ground for reasons of officer safety. Further, plaintiff did not identify any authority to show that defendants' actions were objectively

---

[4] Also, [w]hen deciding a motion for summary judgment prior to a bench trial, the district court has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir.2010). This matter is designated as a bench trial.

unreasonable in light of the law that was clearly established at the time.

In fact, the impetus for plaintiff's suit was not the shove in the back or even being taken to the ground, it was the beating that unknown officers administered to him after he was subdued on the ground. Plaintiff did not adduce evidence to establish that either of the named defendants were involved in this attack. While plaintiff testified that one of the two officers who were escorting him hit him on the back of his head while he was on the ground, plaintiff did not see who administered the blows. Moreover, given that the summary judgment record establishes that Tuttle was not present during the incident, *see* discussion, *supra*, plaintiff is unable to show that Humphrey hit him, rather than the other unknown officer who also was escorting him. That does not end the matter, however.

Although not specifically invoked by plaintiff, he alleged facts that support a claim for bystander liability.[5] The Fifth Circuit has recognized "an officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir.2017) (citations and internal quotation marks omitted). At the time of the subject incident, it was "clearly established in the Fifth Circuit that an officer could be liable as a bystander in a case involving excessive force if he knew a constitutional violation was taking place and had a reasonable opportunity to prevent the harm." *Id*. (citations omitted).

---

[5] "[A] complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011).

13

Here, defendant Humphrey should have known that the unidentified officers were violating plaintiff's constitutional rights when they proceeded to kick and stomp Fremin while he was prone on the ground. Furthermore, because Humphrey was present during the attack, this supports the finding that he could have done something to end the beating, but opted not to intervene. In other words, plaintiff's deposition testimony, which, for purposes of the instant motion the court is obliged to credit, suffices to create a genuine dispute as to a material fact with respect to his bystander liability claim against Humphrey.[6]

Finally, insofar as plaintiff endeavors to assert a claim against defendants for bringing false charges against him, the court observes that there "is no freestanding constitutional right" to be free from false charges." *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003).

## II. Unknown Officers

The named defendants also filed summary judgment on behalf of unserved, "unknown" police officers. On March 15, 2018, however, plaintiff amended his complaint to voluntarily dismiss these parties from the suit. Therefore, summary judgment on their behalf is redundant and unavailable.

## **Conclusion**

For the reasons set forth above, the undersigned finds that there is no genuine dispute as to a material fact as to certain claims, as follows,

IT IS RECOMMENDED that defendants' motion for summary judgment [doc. # 33] be

---

[6] Given the court's finding that plaintiff failed to create a genuine issue of material fact regarding Tuttle's presence during the incident, he also is unable to establish a claim for bystander liability against him. *See McDonald v. McClelland*, No. 17-20620, 2019 WL 3057666, at *4 (5th Cir. July 11, 2019) (Chief was not present, so he cannot be liable as a bystander).

14

GRANTED IN PART, DISMISSING WITH PREJUDICE: 1) plaintiff's claims against Detective Shane Tuttle, in their entirety; and 2) plaintiff's claims against Detective Jeffrey Humphrey for excessive force and for false charges under 42 U.S.C. § 1983 only.

IT IS FURTHER RECOMMENDED that the motion for summary judgment [doc. # 33] otherwise be DENIED, i.e., as to the already dismissed unknown officers, and as to plaintiff's bystander liability claim against defendant, Humphrey.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 6th day of August 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE